## LOUANGEL HOLDING CORPORATION v. ANDERSON, Collector of Internal Revenue.

District Court, S. D. New York.

Oct. 19, 1934.

---

Adrian C. Humphreys and Newton K. Fox, both of New York City, for plaintiff.

Martin Conboy, U. S. Atty., of New York City (Ralph E. Stone, Asst. U. S. Atty., of New York City, of counsel), for defendant.

CAFFEY, District Judge.

This case was argued orally April 24, and the briefs came in May 5. Since then I have had no earlier opportunity to examine the papers. Even now time is not available for reflection or for anything except hurried comment. I regret this; but I feel that it is not my fault. I must dispose of my share of the court's business, as best I can, under the conditions as they prevail in this district.

As I see it, we are not concerned with whether Louis Philippe, the individual, who, upon his sale of the formulæ to the New York corporation in 1921 and 1923, received therefor stock in the New York corporation, would have been taxable if he had sold the stock. Likewise, as I see it, it is not material here to determine what was the value of the formulæ when acquired by the New York corporation—whether $1,005,000 (as alleged in paragraph 26 of the complaint) or $495,000 (the par of the stock of that corporation, which it issued in payment for the formulæ, paragraphs 14 to 17), or a less sum. It is obvious, however, that, when the formulæ became the property of the New York corporation, they had some value. Upon the instant motion to dismiss the complaint, therefore, the sole issue, with respect to the value of the formulæ, is wheth-

er such value is relevant to a determination of the taxability of the New York corporation itself (the plaintiff) upon the transaction in 1928 described in the complaint.

 Counsel are not in agreement with respect to whether, in the sense of the 1928 Revenue Act (26 USCA § 2001 et seq.) or of the 1921 Revenue Act (42 Stat. 227), the reorganization proceedings, as described in the complaint, put the New York corporation in control of the Delaware corporation. The issue turns on the method of computing the pertinent percentage of the New York corporation's holdings of stock of the Delaware corporation.

As disclosed by the complaint, the Delaware corporation was authorized to issue 50,000 shares of class A and 125,000 shares of class B stock—a total of 175,000 shares. The complaint is silent as to which was or whether both were voting stock. The price paid by the Delaware corporation to the New York corporation, for the purchase of all the property of the latter, was 50,000 shares of class A and 75,000 shares of class B stock—a total of 125,000 shares. The plaintiff contends that, as it received only 125,000 out of 175,000 shares, or 71 per cent., of the authorized stock of the Delaware corporation, it was not, immediately after the reorganization, in "control" of the Delaware corporation. So far as I can discover, the defendant does not unequivocally commit himself to any precise contention as to what the percentage was.

I feel that it would be erroneous to take the number of shares the Delaware corporation was authorized to issue as the basis of calculating the percentage and that the correct basis is the number of actually issued shares. If it were otherwise, then defeat of the intent of the statute would be easy. This is the more apparent because, as alleged in paragraph 21 of the complaint, 50,000 of the class B shares, constituting the difference between the totals of 175,000 and 125,000 shares, were, as an element of the transaction and as agreed in the plan of reorganization, retained in the treasury of the Delaware corporation for the purpose of retiring in future an equal number of outstanding class A shares and, in consequence, were not voting shares nor entitled to be included in a statement of the capitalization of the Delaware corporation in any set-up of its financial condition.

As the formulæ were acquired by the New York corporation in 1921 and 1923, I think their cost to the New York corporation must be considered in determining whether in selling them in 1928 it suffered a loss or made a gain, unless the 1928 transaction described in the complaint come within one of the exceptions set out in section 113 (a) of the Revenue Act of 1928 (26 USCA § 2113 (a).

If section 112 of the 1928 Revenue Act, 26 USCA § 2112 (standing alone), governs, then I think either subdivision (b) (4) or subdivision (b) (5), 26 USCA § 2112 (b) (4, 5), would prevent recognition of a gain or loss in the transaction whereby the property of the New York corporation was transferred to the Delaware corporation solely for stock, the amount of which (as I view it) was such as to leave the transferor (New York corporation), on conclusion of the exchange, in control of the transferee (Delaware corporation).

If section 113 of the same statute, 26 USCA § 2113 (standing alone), governs, as previously noted, it seems to me manifest that, in determining gain or loss from transfer of the formulæ, cost of the formulæ must be taken as the basis unless the transaction come within some exception embodied in that section. Three paragraphs of subdivision (a) alone are suggested, and I discover no others for consideration, as creating an exception applicable here. These paragraphs are (6), (7), and (8). Let each be examined. Initially let the dates mentioned in the section be disregarded.

While it may be conceded that the last sentence of (6) is somewhat ambiguous, it seems to me its natural meaning eliminates from application the provisions of the first and second sentences therein. The last sentence says that paragraph (6) "shall not apply to property" (that is, the formulæ) which had been acquired by the corporate taxpayer through "the issuance of its stock * * * as the consideration * * * for the transfer of the property to it." Here, as alleged in the complaint, when the taxpayer (the New York corporation) acquired the formulæ, all it paid for them was stock issued by itself.

So also I think paragraph (7) does not apply, because the formulæ were not acquired by the taxpayer "in connection with a reorganization." There was no reorganization prior to 1928.

That leaves paragraph (8) only for discussion. It is upon this that the defendant really rests his contention.

Paragraph (8) says that, if the taxpayer acquired the formulæ "by the issuance of its stock * * * in connection with a transaction described in section 112 (b) (5) [section 2112 (b) (5)], * * * then the basis shall be" what is therein designated.

The New York corporation did acquire the formulæ for its own stock. We are therefore reduced to two inquiries: (1) Was the stock issued "in connection with a transaction described in section 112 (b) (5)"? (2) If so, what is the basis which the paragraph directs to be applied?

Section 112 (b) (5) describes the transfer of property to a corporation solely in exchange for stock when immediately after the exchange the transferor is in control of the transferee corporation. Here the formulæ were bought by the taxpayer exclusively for its own stock. Moreover, the stock which was constituted the price in that exchange was 99 per cent. ($495,000 out of $500,000) of the stock of the taxpayer, and hence carried control of the taxpayer.

It follows that the basis for determining gain or loss by the taxpayer in disposing of the formulæ is that prescribed by the last clause of paragraph (8), § 113. That basis is "the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

This brings us to a consideration of the significance of the dates mentioned in section 113 (26 USCA § 2113). Subdivision (a) deals in its entirety with the disposition of property acquired after February 28, 1913. Paragraph (8) deals with property acquired after December 31, 1920. As the formulæ were acquired by the taxpayer in 1921 and 1923, manifestly, therefore, in so far as dates cut any figure, the provisions of section 113 heretofore discussed are applicable.

Paragraph (8), however, goes further than mere dates in describing the property (formulæ) brought within its influence. Such property must be acquired by a corporation. Here the taxpayer meets that condition. Secondly, the taxpayer (in its capacity as the transferee when it originally acquired the property [formulæ]) must have acquired that property by the issuance of its (the taxpayer's) stock. That condition likewise is met. In the third place, the issuance of the stock must have been "in connection with a transaction described in section 112 (b) (5)." That condition is also met.

In providing, therefore, in the last clause of paragraph (8), that the basis shall be "the same as it would be in the hands of the transferor," plainly, as I see it, the word "basis" means the basis for determining gain or loss from transfer of the formulæ. So the clause provides, with a modification to be mentioned, that this basis shall be the same as it (the basis) "would be in the hands of the transferor" (the taxpayer). Literally, this language, standing alone, appears to me to mean that the basis shall be the same as if no transfer had occurred at all and the formulæ had continued in the ownership of the taxpayer. To attribute that meaning to the clause, however, would lead to absurdity, and hence must be rejected. Accordingly, in our effort to discover the meaning, we must consider the remaining words and endeavor to harmonize the language of the clause in its entirety.

The remaining words require that the basis shall be increased in the amount of gain or decrease in the amount of loss "recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made." Section 113 (a) (8). It seems to me that the transfer there referred to is the one made in 1928. If so, then the law applicable is the Revenue Act of 1928. If the 1928 act be resorted to, our problem is to ascertain from its terms the amount of gain or loss to the transferor (the taxpayer) upon a transfer of the formulæ in 1928, as such gain or loss is fixed by the 1928 act; that is to say, in order to discover the basis, we must, out of the 1928 act, determine the gain or loss of the taxpayer (the New York corporation) upon its transfer of the formulæ in 1928.

While at first glance such an interpretation seems to lead to a strange result in the case at bar—and perhaps the result suggests that different parts of the statute partially destroy each other in a case of this kind—yet the use of the words "such transfer under the law applicable to the year in which the transfer was made" seems to me to compel the adoption of that interpretation. Otherwise, as I see it, the words "the year in which the transfer was made" would be completely nullified. I see no possibility of maintaining that the transfer, which Congress here had in mind, was that to the taxpayer in 1921 or 1923. I think this is true, because for neither of those

years could there conceivably be a gain or loss to be ascertained as respects the transferor. Hence there could be no occasion for the employment of a basis for determining the amount of the transferor's tax arising out of the exchange of its stock for the formulæ, while it still retained them in its hands.

The New York corporation acquired the formulæ from Louis Philippe and paid for them only by issuance of its stock. If this acquisition of the formulæ and the transfer of them by the New York corporation had both occurred during 1928, then, as it seems to me, by force of paragraph (5) of subdivision (b) of section 112, no gain or loss would be permitted in determining the tax of the New York corporation, because (1) the formulæ were transferred to the New York corporation in exchange for stock and (2) immediately after the exchange the transferor (Louis Philippe) had 99 per cent. of the stock of the New York corporation.

Perhaps the meaning I have ascribed to paragraph (8), when application of it is made of the facts to the case at bar, also leads to some incongruity. For example, the increase or decrease is to be of a gain or loss "recognized" to the transferor, when, as it turns out, by force of paragraph (5) of subdivision (b) of section 112, there is no recognition of any gain or loss whatever. Nevertheless, I feel that the weight of argument supports the view I have taken. Otherwise, as I see it, on the grounds already stated, the provision in the last clause of paragraph (8), § 113 (a), that the basis shall be "the same as it would be" in the hands of the transferor upon a transfer by it under the 1928 act, would be nullified.

We are brought finally to the consideration of whether section 112, standing alone, or section 113, standing alone, governs. As I see it, section 112 governs in all cases of property acquired prior to the dates mentioned in section 113, and the latter applies here because the formulæ were acquired by the taxpayer subsequent to the dates mentioned therein, and section 112 is without any application whatever, save to the extent that its provisions are adopted by reference thereto in section 113.

Much has been said in argument about the Revenue Act of 1921. I do not feel that it has any bearing on the question under consideration. If I be in error on this point, however, I find nothing in that statute which entitles the plaintiff to prevail. If what occurred in the transaction by which Louis

Philippe exchanged the formulæ for stock in the New York corporation be the test, nevertheless, section 202 (c) (3) of the 1921 Revenue Act (42 Stat. 229) removes the transaction from the class of cases in which gain or loss can be recognized, because the exchange of the property for stock in 1921 and 1923 put Louis Philippe in control of the corporation.

Motion granted, with leave to the plaintiff to serve an amended complaint, if desired, within a time to be fixed in the order hereon (say twenty days). Settle order accordingly on two days' notice.